[No. 1248.]

## Frank Pennington v. The State.

1. Practice—Right to Counsel.—The Code of Criminal Procedure requires the trial judge to appoint counsel for indigent defendants only in capital felonies. The appointment of counsel in all other criminal cases is a matter which rests entirely in the discretion of the court, and that counsel was appointed on the day of trial, and no time allowed him for preparation, is not an objection cognizable by this court.
2. Same—Final Judgment.—When a conviction was had before a special judge, who failed to enter a final judgment at the trial term, such special judge, equally with the regular judge (who was not disqualified to act in the case, and was present), was qualified to enter final judgment at the succeeding term. See the opinion *in extenso* for an elaboration of the question.

Appeal from the District Court of Henderson. Tried below before A. B. Watkins, Esq., Special Judge.

A former appeal in this case was dismissed by this court at the last Tyler term, because the record failed to bring up a final judgment. (See 11 Ct. App., 281.) The final judgment having been supplied *nunc pro tunc*, at the April term, 1882, of the district court, the cause is again before this court for review, the appeal being renewed. The conviction was for the burning of the gin house of J. C. Shelton, in Henderson county, and the penalty awarded by the verdict was a term of five years in the penitentiary.

J. C. Shelton testified for the State that he lived in Henderson county, Texas, about six miles southeast from Athens, and lived there when his gin house was burned, sometime during the month of November, 1880. The defendant had been in his employ about ten days before the burning, and was at the gin stand with the witness and others when the fire occurred. The first of the fire observed by the witness was the burning of "motes" to the left of the stand. These were extinguished by another hand, working for the witness. By this time fire was noticed at another and corresponding point on the other side of the gin, near the grease stand. Before this could be extinguished, the lint room took fire, and the witness and his employe ran out,

and discovered that the gin was on fire in the third story.   There was no communication between the lint room and the third story. A few moments before the fire was discovered, the witness saw the defendant up-stairs over the gin stand, throwing down cotton, and saw him pass up and down stairs several times just before the fire.   About fifty bales of seed cotton were stored in the up-stairs room where the defendant was at work.   The defendant left the witness's house the next day and entered the employ of Mr. Miller, a neighbor.   After his arrest, the defendant escaped and was re-arrested some time afterwards in Hamilton county.

Bob Morgan, for the State, testified that he was at Shelton's gin when it was burned in November, 1880, and saw the defendant there.   As the witness passed around from behind the lint room he saw the defendant sitting straddle of a pile of cotton near the gin stand.   The defendant appeared to be doing nothing.   When the witness reached the gin house door the fire was discovered.

Mr. Hogg testified, for the State, that he worked at the gin when it was burned.   He and the defendant sat up together at the gin stand the night after the burning to protect the property and such cotton as had been saved.   In conversation, between midnight and day, the defendant said to the witness that he, the defendant, had been at the burning of five gins, and that he fired that one; that he had burned others.   These were voluntary statements made by the defendant to the witness, during their conversation about the fire.

Sandy Williams testified, for the State, that his employer, Mack Miller, hired the defendant on the day after Shelton's gin was burned, and put him to hauling wood with the witness. The defendant, in his conversation with the witness, while engaged in hauling wood, persisted in talking of nothing but mischief and devilment.   The two discussed the burning of the gin during the evening, and in the course of that conversation the defendant proposed to disclose a secret to the witness, upon his promise not to divulge it.   The witness promised, and defendant then told him that he, defendant, fired Shelton's gin; that he cut off match heads, crawled up on the seed pile and put the match heads in the grease box of the gin bunk.   The defendant told the witness that from this point he went up stairs and awaited developments, and that it seemed to him that "the d——d things never would catch fire," but that finally he heard the alarm of fire from below, when he touched off the cotton up-stairs, and

jumped out. This witness testified, also, that he was present afterwards when the defendant told Miller that Shelton was a "d——d old dog," and that he, the defendant, had fired his gin, and that he had also burned Thompson's gin, a short time before, and three others.

Mack Miller, for the State, testified that he employed the defendant on the morning after the gin was burned, and put him to work that day hauling wood with Sandy Williams. The witness noticed that he and Sandy appeared very intimate that evening. The next day, while the witness and his hands were picking cotton, the defendant talked very freely, and principally about devilment and crime. He told the witness that Shelton was a "d—d old dog," and that he was mad with Shelton because Shelton would not divide between him and the others any part of the cotton which he, defendant, and the others rescued from the burning gin. The witness spoke as though he did not approve of this action on the part of Shelton, and the defendant looked up and asked: "Are you solid?" The witness replied that he was, and the defendant answered: "I believe I will go and burn that d—n cotton; I stuck fire to his gin." The witness asked him how he did it, and he gave the same account of the firing that he gave Sandy Williams.

No brief for the appellant has reached the Reporter.

*H. Chilton,* Assistant Attorney General, for the State.

WILLSON, J. The objection that the court did not appoint counsel to represent the defendant until his case was called for trial, cannot be maintained. While it is the usual practice with district judges, and one to be commended, too, to appoint counsel for indigent defendants in all felony cases, still it is a matter which rests in the discretion of the trial judge, except in *capital* felonies, in which cases the law requires it to be done. (Code Crim. Proc., Art. 571.) In this case counsel was appointed for the defendant, but time was not allowed such counsel to prepare for the trial. This action of the judge is not revisable by this court, and besides, in this case, the defendant has manifestly suffered no injury to his rights, for he was most ably and faithfully defended by the appointed counsel, as appears from the record.

The trial and conviction were had before a special judge. At

the term of the court at which the conviction was had, there was a failure to enter a final judgment upon the minutes.   (11 Texas Ct. App., 281, this same case.)   At a subsequent term of the court, upon motion of the district attorney, the special judge who tried the case caused to be entered upon the minutes a judgment upon the conviction *nunc pro tunc*.   This action was excepted to upon the ground that the authority of the special judge ceased with the term of the court when the trial was had, and that the district judge, who was not disqualified to act in the case, and who was present, should have entered the judgment *nunc pro tunc.* While we are of the opinion that the district judge might properly have acted upon the motion, and caused the judgment to be entered, we are also of the opinion that the special judge had authority to do so.   The Code of Criminal Procedure, Article 572, provides that the special judge agreed upon or appointed to try the case "shall have all the power and authority of the district judge that may be necessary to enable him to conduct, try, determine and *finally dispose of such case.*"   The case was not *finally disposed of* in the court below until the final judgment was rendered, and therein entered upon the minutes of the court. We think the provision of the Code we have cited settles it beyond dispute that the special judge, in causing the judgment to be entered upon the minutes, acted within the scope of his authority, and that the judgment was properly entered and is valid.   (*Edwards* v. *Jones*, 13 Texas, 52; *Myers* v. *The State*, 9 Texas Ct. App., 157.)

Numerous errors are assigned by counsel for appellant, and are earnestly insisted upon.   We have given to each of them our attention and consideration, and we do not think that any of them are tenable.   The charge of the court, we think, was not objectionable in any material respect, and the verdict of the jury is fully supported by the evidence.   The judgment is therefore affirmed.

*Affirmed.*

Opinion delivered October 18, 1882.